The **STATE OF NEW YORK, Cesar Perales, as Commissioner of the New York State Department of Social Services, the City of New York, the County of Suffolk, Peter F. Cohalan, as County Executive of the County of Suffolk, Anita Romero, as Commissioner of the Suffolk County Department of Social Services, and Walthon White, Haydee Guzman, Anibal Villanueva, Rafael Rivera, Gladys Dominguez, Hector Muniz, Luis Diaz, Cathryn Gibbons, Maria Gonzalez, Jorge Perez, Edwarda Rivera, and Hermina Gonzalez, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Margaret M. HECKLER, as Secretary of the United States Department of Health and Human Services, Martha McSteen, as Commissioner of the Social Security Administration, and the United States Department of Health and Human Services, Defendants.**

No. 83 Civ. 5903 (RLC).

United States District Court, S.D. New York.

March 11, 1985.

Robert Abrams, Atty. Gen., of the State of New York, New York City, for Plaintiff pro se and Cesar Perales; Frederick K. Mehlman, Paul M. Glickman, Evelyn M. Tenenbaum, Marla Tepper, Asst. Attys. Gen., New York City, of counsel.

New York Lawyers for the Public Interest, New York City, for plaintiffs Guzman, Villanueva, R. Rivera, Dominguez, Muniz, Diaz, H. Gonzalez and Class Representative, Lewis A. Golinker, New York City, of counsel.

Legal Services for the Elderly, New York City, for plaintiff White, Toby Golick, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for the City of New York; Michael D. Young, Mary McCorry, New York City, of counsel.

Suffolk County Atty., Hauppauge, N.Y., for the County of Suffolk, Peter F. Coha-lan, Anita Romano; Robert Cimino, Asst. County Atty., Hauppauge, N.Y., of counsel.

Bronx Legal Services, New York City, for plaintiffs Gibbons, M. Gonzalez, Perez, E. Rivera and Class Representative; Lucy Billings, Director of Litigation, New York City, of counsel.

MFY Legal Services, Inc., New York City, for plaintiffs Guzman, Villanueva, R. Rivera, Dominguez, Muniz, Diaz, H. Gonzalez and Class Representative; Carolyn A. Kubitschek, New York City, of counsel.

Rudolph W. Giuliani, New York City, U.S. Atty. for S.D.N.Y., for defendants; Annette H. Blum, Regional Atty.—Region II, Gail N. Mancher, Asst. Regional Atty., Dept. of Health and Human Services, New York City, Fred M. Lawrence, Asst. U.S. Atty., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The present motion is for certification of a class action in a challenge to defendants' alleged administrative policy of using *per se* rules to deny and terminate Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) disability benefits to New York State residents who suffer disabling cardiovascular impairment and inability to work. The *per se* rules are allegedly used for determining (1) whether an individual's heart impairment is sufficiently severe to meet or equal the Listing of Impairments for cardiovascular disease established by the Secretary and (2) whether an individual suffering from heart disease has the residual function capacity (RFC) to engage in substantial gainful activity. As such, plaintiffs maintain that the evaluations preclude an individualized assessment of relevant medical evidence or of RFC, in violation of the Social Security Act, its implementing regulations, and the due process clause of the Fifth Amendment. Plaintiffs also charge that, because many of the challenged rules and procedures were not published in the Federal Register, they violate the Federal Register

Act,[1] Freedom of Information Act,[2] and Administrative Procedures Act.[3]

The named plaintiffs are twelve individuals who are joined by the State and City of

1. 44 U.S.C. § 1505, "Documents to be published in Federal Register" in pertinent part reads:

(a) Proclamations and Executive Orders; documents having general applicability and legal effect; documents required to be published by Congress. There shall be published in the Federal Register—

(1) Presidential proclamations and Executive orders, except those not having general applicability and legal effect or effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof;

(2) documents or classes of documents that the President may determine from time to time have general applicability and legal effect; and

(3) documents or classes of documents that may be required so to be published by Act of Congress.

For the purposes of this chapter every document or order which prescribes a penalty has general applicability and legal effect.

(b) Documents authorized to be published by regulations; comments and news items excluded. In addition to the foregoing there shall also be published in the Federal Register other documents or classes of documents authorized to be published by regulations prescribed under this chapter with the approval of the President, but comments or news items of any character may not be published in the Federal Register.

2. 5 U.S.C. § 552, "Public information; agency rules, opinions, orders, records, and proceedings" in pertinent part reads:

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of

general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and

(C) administrative staff manuals and instructions to staff that affect a member of the public;

unless the materials are promptly published and copies offered for sale.

3. 5 U.S.C. § 553, "Rule making", in pertinent part reads:

(a) This section applies, according to the provisions thereof, except to the extent that there is involved—

(1) a military or foreign affairs function of the United States; or

(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief

New York, Suffolk County, and the State and Suffolk County Departments of Social Services. Plaintiffs seek certification of a class action consisting of:

All New York State residents with cardiovascular impairments whose applications or eligibility for SSDI or SSI disability benefits have been or will be denied or terminated by the application of *per se* denial rules on or after June 1, 1980.

In addition, plaintiffs seek an order certifying as a subclass all members of the plaintiff class:

Who have ischemic heart disease, hypertensive vascular disease, myocardiopathies, or rheumatic or syphilitic heart disease and whose disability benefits have been or will be denied or terminated based on the application of *per se* denial rules pertaining to treadmill exercise tests.[4]

Defendants challenge the court's jurisdiction over the class on whose behalf plaintiffs seek to bring this action, arguing that 42 U.S.C. § 405(g)[5] mandates standards of exhaustion and time limitations not met by the plaintiff class.

The § 405(g) requirement of a "final decision of the Secretary made after a hearing" has been held to consist of two elements, a non-waivable jurisdictional requirement that a claim for benefits has been presented to the Secretary ("presentment") and a waivable requirement that the administrative remedies prescribed by the Secretary have been exhausted ("exhaustion"). *Mathews v. Eldridge*, 424 U.S. 319, 328–330, 96 S.Ct. 893, 899–900, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 764–765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *City of New York v. Heckler*, 742 F.2d 729 (2d Cir.1984).

As to the presentment requirement, the Second Circuit adheres to the view that a recipient subject to continuing eligibility review can not meet this requisite through inaction. However, the submission, prior to termination, of a completed Social Security questionnaire indicating in writing that the recipient remains disabled and desires continued benefits satisfies the presentment yardstick. *City of New York v. Heckler, supra.*

In the present case, all class members whose benefits were terminated either completed such a form or, as called for by the Social Security Administration's Program Operations Manual System (POMS) §§ 00504 *et seq.*, participated in its completion. *Wheeler v. Heckler*, 719 F.2d 595, 600 (2d Cir.1983). Further, the inclusion of class members who will be denied or terminated from benefits in the future presents no jurisdictional problem since such individuals will not actually be covered by any order or judgment entered in these cases until they make a claim for benefits in some form, thus satisfying the presentment requirement. *Dixon v. Heck-*

statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

4. Neither the proposed class nor subclass is affected by the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 *et seq.* (October 9, 1984).

5. 42 U.S.C. § 405(g), in pertinent part, reads:
Judicial review
Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

*ler,* 589 F.Supp. 1494, 1512 (S.D.N.Y.1984) (Lasker, J.).

██ The need to exhaust administrative remedies may be waived by the court in appropriate circumstances. *City of New York v. Heckler, supra,* 742 F.2d at 736. This waiver may be exercised where plaintiffs' legal claims are collateral to the demand for benefits, where exhaustion would be futile, or where the harm suffered pending exhaustion would be irreparable. *Id.* No one factor is critical and "a general approach, balancing the competing considerations to arrive at a just result under the circumstances presented" has been adopted by this circuit. *Id.*

██ As in *City of New York,* issues of collaterality and futility make waiver appropriate here.

[T]he class here complains fundamentally of a procedural irregularity and not of the Secretary's substantive standards of eligibility. The District Court was not asked to and did not rule on the merits of any of the underlying claims. In this regard cases such as *Heckler v. Lopez,* [463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431]; *Heckler v. Ringer,* [— U.S. —, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)] and *Smith v. Schweiker,* [709 F.2d 777 (2d Cir.1983)], which involved challenges to the Secretary's substantive standards, are distinguishable. We conclude, therefore, that although not 'wholly' collateral, plaintiffs' claims are substantially collateral to their entitlement to disability benefits and consequently present an appropriate circumstance for waiver. [Citations omitted].

\*   \*   \*   \*   \*   \*

Moreover, under the circumstances of this case, exhaustion of administrative remedies would have been futile.... [T]he administrative process can not vindicate the procedural rights asserted in this litigation. The class members complain of a procedural irregularity—the failure of the Secretary to base eligibility determinations on individualized assessments.... This procedural right, guaranteed by the Secretary's regulations, cannot be vindicated by an ultimate de-

termination of eligibility. For that reason further exhaustion may justifiably be waived.

*Id.* at 737.

██ A further obstacle to certification of the class is the sixty day limitation imposed by 42 U.S.C. § 405(g), *supra* at note 2. Under that statute, claimants must seek judicial review of final decisions of the Secretary "within sixty days after the mailing ... of notice of such decisions or within such further time as the Secretary may allow." This requirement is not jurisdictional and acts as a statute of limitations, waivable by the parties. *Id.* at 738. The Second Circuit found that the period was tolled during the time that the Social Security Administration's policy of applying *per se* rules remained operative but undisclosed. *Id.* There, however, the government maintained a systematic clandestine policy of procedural irregularities that was not fully revealed until the litigation. That is not alleged here, and plaintiffs argue tolling based only upon the fact that the contested *per se* rules were not published in the Federal Register, in alleged violation of notice and comment requirements.

██ Generally, defendants will be estopped from invoking a statute of limitations defense if they have previously, by deception or in violation of a duty toward plaintiffs, caused plaintiffs to subject the claim to the statutory bar. *Borzeka v. Heckler,* 739 F.2d 444, 448 n. 3 (9th Cir. 1984); *see Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); 53 C.J.S. Limitations of Actions § 25 (1948 and Supp.1984). Such estoppel may result from fraudulent concealment. *Saylor v. Lindsley,* 302 F.Supp. 1174 (S.D.N.Y.1969) (Cooper, J.). It appears that this is the basis for the Second Circuit's tolling of the six month limitations period in *City of New York.*

There the court held:

Where the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of

action. *See Lopez v. Heckler, supra,* 725 F.2d at 1505–07 (disability claim); *Barrett v. United States,* 689 F.2d 324, 327–30 (2d Cir.1982) (claim under Federal Tort Claims Act), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *Chiappa v. Califano,* 480 F.Supp. 856 (S.D.N.Y.1979) (disability of claim).

*City of New York v. Heckler, supra,* 742 F.2d at 738.

■ While the nonpublication of the *per se* rules in the Federal Register may not have been as egregious as the practice of unpublished internal memoranda and misstatements about the scope of their use documented in *City of New York,*[6] the absence of formal publication of the cardiac impairment policy, if proved and proved to have been required, had the same effect on the present class for purposes of the limitations period as it had in *City of New York.* Plaintiffs would then have lacked the ability to know of the use of *per se* rules and, as the Second Circuit found, would therefore be "entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States." *Id.* Thus, jurisdiction over the proposed class and subclass is appropriate here.

■ Plaintiffs' have met their burden of establishing that all requirements of class certification under Rule 23(a), F.R.Civ.P., have been met. *See Warren v. ITT World Communications, Inc.,* 95 F.R.D. 425, 428 (S.D.N.Y.1982) (Sprizzo, J.). Plaintiffs maintain that the class numbers in the tens of thousands, thus fulfilling the numerosity component. Common questions of law and

fact are presented in that the inquiry addressed by this litigation is not to a determination of the merits of individual claims, but to the legality of defendants' policy of using *per se* rules to deny disability claims. The typicality requirement is met since the named plaintiffs are persons with alleged cardiovascular impairments whose initial applications for benefits were denied or whose eligibility was terminated based on the challenged rules. Further, the claims of the named plaintiffs present no material interests adverse to those of the class as a whole and all seek the same relief. Fair and adequate representation is assured by the qualifications of the attorneys and the unlikeliness of collusion among the litigants. The class also satisfies Rule 23(b)(2), F.R.Civ.P., in that defendants' alleged use of *per se* rules is generally applicable to the class and injunctive relief is requested. *See generally City of New York v. Heckler, supra.*

■ Moreover, plaintiffs have met their burden of showing that the subclass meets the Rule 23, F.R.Civ.P., requirements. *Grogg v. General Motors, Inc.,* 72 F.R.D. 523, 530 (S.D.N.Y.1976) (Duffy, J.). Numerosity here is satisfied since the subclass is estimated to be half the size of the larger class and typicality is met since the named subclass plaintiffs share the same types of heart disease which require the challenged treadmill test. The common-question, fair and adequate representation, and absence of adverse interests within the subclass requirements are satisfied for the same reasons as the class in general. This is also true for the Rule 23(b)(2) requirement since the treadmill test is generally applicable to the subclass and injunctive

---

**6.** *City of New York v. Heckler, supra,* 742 F.2d at 732, n. 1 reads:

1. SSA's policy was communicated through a series of unpublished internal memoranda circulated within SSA from 1979 through 1982. It was enforced on the state disability determination agency through SSA's "Quality Assurance Review" of initial state determinations. At both the regional and national levels SSA analysts and physicians conduct sample reviews of state agency decisions. Whenever regional or national review detects an "error," the claim is remanded to the state

agency for redetermination. According to the evidence presented to the District Court, for the period in question SSA quality assurance reviews, and consequently the state agency whose performance SSA scrutinized, were guided by the challenged presumption.

*Id.* at 738, n. 5 reads:

5. Although an earlier case, *Mental Health Ass'n of Minnesota v. Heckler, supra,* involved the identical SSA presumption at issue here, in that litigation SSA erroneously represented that the presumption was not in use in other SSA regions.

relief is requested. *See generally City of New York v. Heckler, supra.*

For the above reasons, the motion for class certification is granted.

IT IS SO ORDERED.